United States Courts
Southern District of Texas
FILED

MAR 16 2016

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Criminal No. |
| v. | § | |
| | § | **UNDER SEAL** |
| NKIRU IBEABUCHI, and | § | |
| REX DURUJI | § | **16 CR 0114** |
| | § | |
| Defendants. | § | |

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and

        iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8. Koby Home Health, Inc. ("Koby") was a Texas corporation doing business at 14203 Berrington Drive, Houston, Texas. Koby submitted claims to Medicare for home health services purportedly provided to Medicare beneficiaries.

9. Defendant **NKIRU IBEABUCHI**, a resident of Fort Bend County, Texas, was the owner and administrator of Koby.

10. Defendant **REX DURUJI**, a resident of Harris County, Texas, was a patient recruiter for Koby.

## COUNT 1
## Conspiracy to Commit Healthcare Fraud
## (Violation of 18 U.S.C. § 1349)

11. Paragraphs 1 through 10 are re-alleged and incorporated by reference as if fully set forth herein.

12. From in or around May 2012 through in or around June 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**NKIRU IBEABUCHI**, and
**REX DURUJI**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that

is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services.

### Purpose of the Conspiracy

13. It was a purpose of the conspiracy for Defendants **IBEABUCHI** and **DURUJI**, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of Defendants and their co-conspirators.

### Manner and Means of the Conspiracy

14. Defendant **IBEABUCHI** maintained a Medicare provider number, which Defendant **IBEABUCHI** used to submit claims to Medicare for home health services that were not medically necessary, not provided, or both.

15. In or around May 2012 through in or around June 2015, Defendant **IBEABUCHI** paid Dr. A approximately $60 per patient to sign documents authorizing Medicare beneficiaries for home health services with Koby.

16. In or around May 2012 through in or around June 2015, Defendant **IBEABUCHI** paid Dr. B approximately $60 per patient to sign documents authorizing Medicare beneficiaries for home health services with Koby.

17. Defendant **IBEABUCHI** paid kickbacks to patient recruiters, including Defendant **DURUJI**, in exchange for referring Medicare beneficiaries to Koby for home health services.

18. Defendants **IBEABUCHI** and **DURUJI** paid kickbacks to Medicare beneficiaries in exchange for signing up for home health services with Koby.

19. Defendant **IBEABUCHI** signed medical records falsely representing that Medicare beneficiaries qualified for home health services, when they actually did not qualify for home health services under Medicare.

20. Defendant **IBEABUCHI** submitted and caused the submission of claims to Medicare for home health services that were not provided, not medically necessary, or both. Medicare paid Koby on those claims.

21. From in or around May 2012 to in or around June 2015, Koby billed Medicare approximately $1.2 million for home health services that it had purportedly provided to Medicare beneficiaries. Medicare paid approximately $1.2 million on those claims.

22. After Medicare deposited payments into Koby's bank accounts, Defendant **IBEABUCHI** transferred proceeds of the fraud to herself and her co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Pay Healthcare Kickbacks
### (Violation of 18 U.S.C. § 371)

23. Paragraphs 1 through 10 and 14 through 22 are re-alleged and incorporated by reference as if fully set forth herein.

24. From in or around May 2012 through in or around June 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**NKIRU IBEABUCHI**, and
**REX DURUJI**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the

6

purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare.

### Purpose of the Conspiracy

25. It was a purpose of the conspiracy for Defendants **IBEABUCHI** and **DURUJI** and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Koby submitted claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which Defendants **IBEABUCHI** and **DURUJI** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

26. Paragraphs 1 through 10 and 14 through 22 are re-alleged and incorporated by reference as though fully set forth herein.

### Overt Acts

27. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

    a. In or around 2014, Defendant **IBEABUCHI** paid approximately $15,000 to Defendant **DURUJI** in exchange for Defendant **DURUJI** referring Medicare beneficiaries for home health services with Koby.

    b. In or around 2014, Defendants **IBEABUCHI** and **DURUJI** paid cash to Medicare beneficiary J.S. in exchange for J.S. referring Medicare beneficiaries for home health services with Koby.

c.      In or around 2014, Defendants **IBEABUCHI** and **DURUJI** paid cash to Medicare beneficiary J.S. in exchange for J.S. signing up for home health services with Koby.

d.      In or around 2014, Defendant **DURUJI** paid cash to Medicare beneficiary W.S. in exchange for W.S. signing up for home health services with Koby.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 3-4**
**Healthcare Fraud**
**(Violation of 18 U.S.C. §§ 1347 and 2)**

28.     Paragraphs 1 through 10, 14 through 22, and 27, are re-alleged and incorporated by reference as if fully set forth herein.

29.     On or about the date specified below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**NKIRU IBEABUCHI**, and
**REX DURUJI**

aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

| Count | Defendants | Medicare Beneficiary | On or About Dates of Services | Approximate Medicare Payment |
|---|---|---|---|---|
| 3 | IBEABUCHI and DURUJI | W.S. | March 14, 2014 to May 2, 2014 | $2,747.73 |
| 4 | IBEABUCHI | S.O. | October 18, 2014 to December 16, 2014 | $2,848.42 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(7))

30. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendants **IBEABUCHI** and **DURUJI** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses is subject to forfeiture.

### Money Judgment

31. Defendants **IBEABUCHI** and **DURUJI** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least $1,297,271.13, and for which Defendants may be jointly and severally liable.

9

Substitute Assets

32. Defendants **IBEABUCHI** and **DURUJI** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of Defendants or their co-conspirators:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of Defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

SCOTT P. ARMSTRONG
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE